**GETTY OIL COMPANY and Texaco Inc., Appellants,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, NL Industries, Inc. and Youell and Companies, Appellees.**

**No. C14–90–00552–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 7, 1991.

Rehearing Denied Dec. 5, 1991.

---

Joe G. Roady, Mary-Ann A. Bellatti, Mariam Kass, Houston, for appellants.

Byron Lee, David W. Prasifka, Jack G. Carnegie, John C. Allen, Tom Bayko, Tom Lorance, Houston, for appellee.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

OPINION

SEARS, Justice.

Getty Oil Company (Getty) and Texaco Inc. (Texaco) appeal from a summary judgment in their suit against Insurance Company of North America (INA), NL Industries, Inc. (NL), and Youell and Companies (Youell). Appellants raise seven points of error claiming that NL's agreement to extend all insurance coverage to Getty is not a prohibited indemnity agreement. Appellants also contend that res judicata and collateral estoppel do not bar the instant suit. Because we find res judicata applicable, we affirm the trial court's judgment.

Getty and NL contracted for Getty to purchase chemicals and services. Paragraph 4 of the contract is entitled "INSURANCE AND INDEMNITY." This paragraph provides:

> Seller agrees to maintain at Seller's sole cost and expense, from the time operations are commenced hereunder until Order is fully performed and discharged, insurance of all types and with minimum limits as follows, and furnish certificates to Purchaser's Purchasing Department evidencing such insurance with insurers acceptable to Purchaser:
>
> . . . .
>
> All insurance coverages carried by Seller, whether or not required hereby, shall extend to and protect Purchaser, its co-owners and joint venturers (if any), to the full amount of such coverages and shall be sufficiently endorsed to waive any and all claims by the underwriters or insurers against Purchaser, its co-owners, joint venturers, agents, employees and insurance carriers.

Seller shall indemnify, defend and hold harmless Purchaser, its co-owners, joint venturers, agents, employees and insurance carriers from any and all losses, claims, actions, costs, expenses, judgments, subrogations, or other damages.... Seller shall not be held responsible for any losses, expenses, claims, subrogations, actions, costs, judgments, or other damages, directly, solely, and

proximately caused by the negligence of Purchaser. Insurance covering this indemnity agreement shall be provided by Seller.

Carl Duncan, a Getty employee, was injured when a barrel of NL chemicals exploded. Duncan died from his injuries and his estate brought a wrongful death suit against Getty, NL, and others. Getty filed a cross claim against NL for indemnity and contribution. The jury found Getty 100% negligent and the trial court denied Getty's cross-action for contribution and indemnity. Getty settled with the plaintiff but appealed the adverse ruling on its cross action. The trial court's ruling was affirmed on appeal. *See Getty Oil Corp. v. Duncan*, 721 S.W.2d 475 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.).

Getty then filed the instant suit against NL for breach of contract in failing to name Getty as an additional insured and against the primary and excess carriers, INA and Youell respectively, for not paying on the policies. Appellees filed motions for summary judgment on the grounds that Getty's claims were barred by the express negligence doctrine, by the Texas Oilfield Anti–Indemnity Statute, and by res judicata. The trial court granted these motions.

A trial court properly grants summary judgment only when the movant establishes that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *See* TEX.R.CIV.P. 166a(c). In reviewing a summary judgment, an appellate court must accept as true all evidence favorable to the non-movant, indulging all reasonable inferences and resolving all doubts in the non-movant's favor. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

■■■ In point of error six, appellants claim the trial court erred as a matter of law in granting summary judgment based on res judicata. Res judicata involves the principles of merger and bar. If a plaintiff prevails, his cause of action merges into the judgment, dissolving the cause of action. *Jeanes v. Henderson*, 688 S.W.2d 100, 103 (Tex.1985). If, on the other hand,

the plaintiff loses the original suit, the plaintiff is barred from bringing another action upon the claims actually litigated *and those that could have been litigated in the original action. Id.; Texas Water Rights Comm'n v. Crow Iron Works*, 582 S.W.2d 768, 771–72 (Tex.1979). Thus, res judicata prevents a plaintiff from bringing a second suit against the same parties or their privies asserting causes of action arising out of the same subject matter and that might have been asserted in the first suit. *Texas Water Rights Comm'n*, 582 S.W.2d at 772; *Abbott Laboratories v. Gravis*, 470 S.W.2d 639, 642 (Tex.1971). Generally, "a judgment on the merits in a suit on one cause of action is not conclusive of a subsequent suit on a different cause of action except as to issues of fact actually litigated and determined in the first suit." *Griffin v. Holiday Inns of America*, 496 S.W.2d 535, 538 (Tex.1973). A party may not, however, relitigate the same claim under a different theory. *See id.* at 537 (citing *Abbott*, 470 S.W.2d at 642).

■ Appellees argue that appellants' suit is a disguised attempt to relitigate the original claim for indemnity. In support of this argument, appellees cite *Ocean Drilling & Exploration Co., Inc. v. Mont Boat Rental Services, Inc.*, 799 F.2d 213 (5th Cir.1986). In that case, an Ocean Drilling employee was injured while unloading equipment from a boat owned by Mont. *Id.* at 215. The employee sued Ocean Drilling who in turn filed third-party claims of contribution and indemnity against Mont. *Id.* The jury absolved Mont of any wrongdoing and found Ocean Drilling at fault, assessing damages of $340,000.00. *Id.* The trial court rendered judgment against Ocean Drilling on its third-party claims. *Id.* Ocean Drilling then brought suit against Mont and its insurers and broker for reimbursement of the amount paid to the injured employee. *Id.* The trial court dismissed Ocean Drilling's suit on the ground of res judicata. *Id.*

The Fifth Circuit applied the transactional test of the Restatement (Second) of Judgments to determine whether the causes of action in the two suits were the

same.[1] *Id.* at 217 (citing RESTATEMENT (SECOND) OF JUDGMENTS § 24(1) (1982)). Although the court acknowledged that the theories asserted in the two suits were different, the court found that the right Ocean Drilling sought to redress, reimbursement for the obligation incurred as a result of the judgment in the first suit, was the same in both suits. *Id.* Because the two causes of action were based on substantially the same facts, the court held that res judicata barred the second suit. *Id.*

Citing *Griffin v. Holiday Inns of America*, 496 S.W.2d 535, 538 (Tex.1973), appellants claim that *Ocean Drilling* is inapplicable because Texas courts expressly refuse to follow the Restatement transactional test. In *Griffin*, the court clarified a prior holding that a party cannot relitigate matters that could have been raised in a prior action between the same parties or their privies relating to the same subject matter. *Id.* at 537 (citing *Abbott*, 470 S.W.2d at 642). The *Griffin* court held that the term "subject matter" refers to "the claim or controversy at issue in the earlier suit and not to the transaction out of which the suit arose." *Id.* The court further stated:

> We have not said or held that a judgment in a suit on one claim or cause of action is necessarily conclusive of all claims and causes of action against the same party, or relating to the same property, or arising out of the same transaction. Apparently some courts have gone that far, but we are unwilling to do so.

*Id.* at 538.

We disagree with appellants' reliance on this statement in *Griffin*. Even if Texas courts do not apply res judicata to all claims arising from the same transaction, they do apply res judicata where a party reasserts the same claim under a different theory. *See id.* at 537 (citing *Abbott*, 470 S.W.2d at 637 (plaintiff lost original suit alleging negligence and attempted to bring second suit alleging products liability)). Thus, we must determine whether appellants' claim in this case is essentially the same claim raised in the prior suit.

In the first suit, appellants sought indemnity from NL under the indemnity provision of the contract. In the instant suit, appellants seek reimbursement of the amount paid to the plaintiff in the first suit from NL and its insurers based on the provision that NL would extend all insurance coverage to Getty. Appellants allege that NL breached its contract by failing to make Getty an additional insured on the policies and that NL's insurers wrongfully denied payment to Getty as an additional insured.

Paragraph 2 of the "INSURANCE AND INDEMNITY" provision of the contract states that "[a]ll insurance coverages carried by [NL], whether or not required hereby, shall extend to and protect [Getty]. . . ." Because appellants seek reimbursement for the amount paid to the plaintiff in the prior suit under this provision, appellees argue that appellants' construction of this provision would transform the provision into a prohibited agreement to indemnify Getty for its sole negligence. Appellees contend that *Fireman's Fund Ins. Co. v. Commercial Standard Ins. Co.*, 490 S.W.2d 818 (Tex.1972), *overruled, Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705 (Tex.1987), remains viable to the extent it addresses provisions for insurance and that it is controlling in this regard. In *Fireman's Fund*, the contract provided:

> The Contractor shall protect the Owner and Architect–Engineer against all liabilities, claims or demands for injuries or damages to any person or property grow-

---

1. The Restatement transactional test provides: When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . ., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

RESTATEMENT (SECOND) OF JUDGMENTS § 24(1) (1982). Comment (c) to § 24 adds that multiple transactions are not created simply because a number of legal theories of liability are applicable. RESTATEMENT (SECOND) OF JUDGMENTS § 24, comment (c) (1982).

ing out of the performance of work under this specification.

. . . .

In addition to the Liability Insurance for the protection of the Owner and Architect–Engineer, the Contractor shall, during the continuance of the work under this contract and also extra work in connection therewith, maintain Liability Insurance for injury and/or death to any of his employes [sic] and/or to other persons, including any liability which may arise by virtue of the statute or law now in force or which may hereafter be enacted.

... [Contractors] shall specifically and distinctly assume and do so assume all risks of damage or injury from any cause except negligence of Owner....

*Id.* at 821 (emphasis omitted). Because the *Fireman's Fund* contract required the contractor to carry liability insurance to protect the owner against all claims and demands growing out of performance of the contract, the owner argued that the contractor agreed to cover the owner's negligent acts. *See id.* at 823. The court disagreed and interpreted the requirement to carry liability insurance as a provision to assure performance of the subsequent indemnity provision and not as evidence of an intent to broaden the contractual indemnity obligation. *Id.*

Although the holding in *Fireman's Fund* indicates that Texas courts will avoid construing an insurance provision to extend an indemnity obligation to cover an indemnitee's sole negligence, factual differences prevent us from holding *Fireman's Fund* controlling. The extension of coverage provision in the NL–Getty contract provides that NL shall extend all of its insurance coverages, *whether or not required by the other provisions of the contract,* to cover Getty. Thus, the express language of the contract precludes a finding, as in *Fireman's Fund,* that the extension of coverage provision was intended only to assure performance of the indemnity agreement.

Appellees argued in the trial court that the extension of insurance provision was unenforceable because it violated a Texas statute and the express negligence test. Article 2212b declares void the indemnity provisions in certain agreements purporting to indemnify the indemnitee against liability for damages caused by its sole or concurrent negligence. *See* Act of June 16, 1973, 63rd Leg., R.S., ch. 646, 1973 Tex. Gen.Laws 1767 (formerly TEX.REV.CIV.STAT. ANN. art. 2212b, §§ 1–2 (Vernon 1979); repealed 1985 and now codified at TEX.CIV. PRAC. & REM.CODE ANN. §§ 127.001–127.008 (Vernon 1986 & Vernon Supp.1991)) (hereinafter referred to as art. 2212b). This statute applies to "agreements pertaining to wells for oil, gas, or water, or mines for other minerals." *Id.* at § 1. Appellants maintain that art. 2212b is inapplicable because: (1) the instant contract does not contain an indemnity provision prohibited by art. 2212b; (2) the extension of insurance coverage provision does not constitute an indirect indemnity such that art. 2212b applies; and (3) the instant contract is not an agreement pertaining to wells.

We turn first to appellants' claim that art. 2212b is inapplicable because the extension of coverage provision of the contract does not constitute an indemnity obligation. Appellants ask this court to follow case law from federal and other state courts, faced with similar contractual provisions, that held that such provisions are not indemnities rendered void by anti-indemnity statutes or by common law prohibitions. *See Voisin v. O.D.E.C.O. Drilling Co.,* 744 F.2d 1174, 1177 (5th Cir.1984), *cert. denied,* 470 U.S. 1053, 105 S.Ct. 1757, 84 L.Ed.2d 820 (1985) (where contract required promisor to name promisee as additional insured on promisor's insurance policies, court held that provision was not void under a federal anti-indemnity statute); *Price v. Zim Israel Navigation Co.,* 616 F.2d 422, 428–29 (9th Cir.1980) (found no violation of federal anti-indemnity statute where contract required promisor to name promisee as co-insured on comprehensive liability policy); *Cone Bros. Contracting Co. v. Ashland–Warren, Inc.,* 458 So.2d 851, 856 (Fla.Dist. Ct.App.1984), *pet. denied,* 464 So.2d 554 (Fla.1985) (found Florida anti-indemnity statute inapplicable to contract provision

obligating promisor to provide insurance and to name promisee as additional insured); *Terrace Shopping Center Joint Venture v. Oxford Group, Inc.*, 192 Ga. App. 346, 384 S.E.2d 679, 680 (1989) (held Georgia anti-indemnity statute did not render void a contractual provision requiring promisor to maintain insurance and to name promisee as additional insured on all liability policies); *Bosio v. Branigar Org., Inc.*, 154 Ill.App.3d 611, 107 Ill.Dec. 105, 107–08, 506 N.E.2d 996, 998–99 (1987) (where contract required promisor to furnish insurance indemnifying promisee from all personal injury claims, court found anti-indemnity statute inapplicable because it found the provision to be an agreement to obtain insurance and not an agreement to indemnify); *Zettel v. Paschen Contractors, Inc.*, 100 Ill.App.3d 614, 56 Ill.Dec. 109, 111, 427 N.E.2d 189, 191 (1981) (where contract required promisor to add endorsement to insurance policies covering promisee's liability, court found Illinois anti-indemnity statute inapplicable); *Heat & Power Corp. v. Air Prod. & Chem., Inc.*, 320 Md. 584, 578 A.2d 1202, 1206 (Ct.App.1990) (held that contract requiring promisor to name promisee as additional insured did not require promisor to insure promisee against its own negligence); *Kinney v. Lisk Co., Inc.*, 76 N.Y.2d 215, 557 N.Y.S.2d 283, 284–85, 556 N.E.2d 1090, 1091–92 (1990) (found no violation of New York anti-indemnity statute where contract required promisor to maintain such insurance policies as would protect both promisor and promisee); *Pickhover v. Smith's Mgmt. Corp.*, 771 P.2d 664, 668 (Utah App.1989), *cert. denied*, 795 P.2d 1138 (Utah 1990) (where promisor agreed to provide insurance coverage to protect promisee against personal injury, death, or property damage claims, court found provision not subject to Utah rule of strict construction of indemnity agreements).

Appellees, on the other hand, cite a number of cases from other jurisdictions invalidating provisions similar to the one at issue here. *See Singh v. John Gargas Landslide Repairs*, 588 F.Supp. 1359, 1362 (C.D.Cal.1984) (where contract required promisor to carry insurance, court denied promisee's claim that provision was implied contractual indemnity agreement); *Nesom v. Chevron U.S.A., Inc.*, 633 F.Supp. 55, 59 (E.D.La.1984) (where contract required promisor to carry insurance protecting both parties, court refused to interpret this to require promisor to insure promisee's negligence because this would violate the Louisiana anti-indemnity statute); *University Plaza Shopping Center v. Stewart*, 272 So.2d 507, 512 (Fla.1973) (where contract required promisor to indemnify promisee and to maintain liability insurance covering both parties, court found that provision did not authorize indemnification for promisee's sole negligence and that insurance coverage did not extend beyond promisor's liability); *Westinghouse Elec. Elevator Co. v. La Salle Monroe Bldg. Corp.*, 395 Ill. 429, 70 N.E.2d 604, 607 (1946) (although promisor agreed to provide insurance covering both parties, court refused to construe provision to require promisor to indemnify promisee against its own negligence in absence of clear language in contract to that effect); *Fourfouris v. Standard Oil Realty Corp.*, 100 Ill.App.3d 162, 55 Ill.Dec. 590, 591–92, 426 N.E.2d 915, 916–17 (1981) (followed *Westinghouse* and refused to construe provision to provide insurance as agreement to protect other party against its own negligence in the absence of clear language in contract); *Amoco Prod. Co. v. Action Well Serv., Inc.*, 107 N.M. 208, 755 P.2d 52, 55 (1988) (where contract required promisor to obtain insurance covering indemnity agreement, court held that provision related to insurance purchased by indemnitor to protect its own interest and not to the interest of the indemnitee); *Mountain Fuel Supply Co. v. Emerson*, 578 P.2d 1351, 1354 (Wyo.1978) (although contract required contractor to maintain insurance, court expressed doubt that insurance could save a prohibited indemnity agreement, but the court did not need to decide the issue since the insurance policy was not in the record).

Although appellees attempt to attribute the split in authority to differences in the individual contractual provisions and statutes involved, we do not find these distinc-

tions significant. All of the statutes invalidate indemnity agreements that purport to protect the indemnitee from the results of its own negligence. Appellees argue that, if we look to other jurisdictions for guidance, we should follow the case law in Louisiana, New Mexico, and Wyoming because these states have oilfield anti-indemnity statutes similar to the Texas statute. That the Louisiana, New Mexico, and Wyoming statutes relate to agreements between parties in the oil, gas, or mining industries is, in our opinion, not a persuasive reason to follow the holdings in those states. These statutes, like the non-oilfield anti-indemnity statutes cited in other cases, all prohibit agreements that purport to indemnify the promisee against the results of its sole negligence. Furthermore, the Louisiana statute differs from all other statutes in that it expressly prohibits "waivers of subrogation, additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the prohibitions of [the statute]...." LA.REV.STAT.ANN. § 9:2780(G) (West 1991). The Texas statute includes no such prohibition.

Although some of the cases are distinguishable in that the insurance provisions are expressly tied to the indemnity obligation, *see Fourfouris*, 55 Ill.Dec. at 592, 426 N.E.2d at 917; *Amoco*, 755 P.2d at 53; *Bosio*, 107 Ill.Dec. at 106, 506 N.E.2d at 997; we cannot justify the split in the jurisdictions solely on the basis of differences among the contractual provisions. We find no significant difference between a provision requiring a promisor to obtain and maintain insurance covering the promisee and a provision requiring the promisor to name the promisee as an additional named insured on the promisor's policy.

The cases cited by appellant reason that an insurance provision is distinct from an indemnity agreement because an insurance procurement provision does not make the promisor liable to the promisee. *See Price*, 616 F.2d at 429; *Terrace*, 384 S.E.2d at 680. Rather, those courts find that such a provision merely shifts the risk of loss to an insurance company and only renders the promisor liable for paying the insurance

premiums. *See, e.g., Price*, 616 F.2d at 429. While this may be true, the promisor may be liable for a judgment against the promisee where the promisor breaches the agreement to procure insurance. *See Zettel*, 56 Ill.Dec. at 113, 427 N.E.2d at 193. In making the distinction between insurance and indemnity, those courts fail to mention that, by upholding the insurance provision, the promisee is permitted to do indirectly what it cannot do directly under the anti-indemnity statute—avoid liability for its sole negligence. *See Nesom*, 633 F.Supp. at 59. Although the provision here is, by its express terms, not intended to support only the indemnity obligation, the effect of upholding it would be to allow Getty to avoid liability for its sole negligence. This result does, as appellees argue, contravene the statutory goal of prohibiting agreements allowing a party to avoid responsibility for the results of its own negligence.

■ Even if art. 2212b were inapplicable on the ground that the contract does not pertain to oil or gas wells, upholding the instant provision would contravene public policy expressed in Texas common law limiting the right of parties to contract for indemnity. Under the express negligence doctrine, an obligation to indemnify a promisee from the consequences of its own negligence must be specifically expressed in the contract. *See Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex. 1987). Although case law applies the express negligence doctrine to contractual indemnity provisions, *see Continental Steel Co. v. H.A. Lott, Inc.*, 772 S.W.2d 513, 515 (Tex.App.—Dallas 1989, writ denied), Texas courts would undoubtedly extend this limitation to insurance provisions covering the indemnity obligation that purport to protect the indemnitee from the results of its sole negligence. *See Fireman's Fund*, 490 S.W.2d at 823. Despite appellants' arguments to the contrary, we find that upholding the extension of coverage provision would allow appellants to avoid the consequences of their own negligence. This relief is identical to that sought in the first suit in its claim for indemnity.

915

Because appellant seeks reimbursement of the amount paid to the plaintiff in the original lawsuit based on the finding that appellant was solely negligent, appellant seeks the same relief sought in the original suit. Faced with precisely the same circumstances, the Fifth Circuit held that res judicata barred the second suit. *See Ocean Drilling,* 799 F.2d at 215. Similarly, Texas law bars a party from attempting to relitigate a claim for damages under a different theory of liability. *Griffin,* 496 S.W.2d at 537. Because we find that appellant seeks the same relief in this suit as it unsuccessfully sought in the first suit, res judicata bars appellant from reasserting this claim under a different theory. Thus, the trial court properly rendered summary judgment in favor of appellees. We overrule point of error six.

Having held that the trial court properly granted summary judgment based on res judicata, we need not address appellants' other points of error.

We affirm the trial court's judgment.